**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

SANDRA J. ORTIZ-OLIVERA,

Plaintiff,

v.

DOCTORS' CENTER HOSPITAL, INC., *et. al.*,

Defendants.

CIVIL NO.  21-1169 (HRV)

## **MEMORANDUM AND ORDER**

The present is a diversity jurisdiction medical malpractice action brought by Plaintiff Sandra Ortiz-Olivera alleging that she suffered damages at the hands of the co-defendants due to negligence in treating her serious medical conditions. (Complaint, Docket No. 1). More specifically, it is alleged that after undergoing surgery, Plaintiff was discharged from the hospital even though her clinical picture demonstrated that an infection was in progress.  Said infection, Plaintiff avers, developed quickly into sepsis. She returned to the hospital approximately three (3) hours later after being found unconscious on the floor of her home.  Plaintiff maintains that a delay in treating her caused her to go into septic shock and organ failure.  According to Plaintiff, she went into cardiac arrest, had to be intubated and endured a hospitalization that lasted over a month.

1

The Defendants have denied liability claiming that the treatment provided to the Plaintiff did not deviate from the established standard of care, nor are any of their actions the proximate cause of Plaintiff's damages. Trial is set to begin on June 3, 2024. (Docket No. 103).

Pending before the court are two motions *in limine* pertaining the report and testimony of plaintiff's expert, Dr. Pedro Rodríguez Benítez ("Dr. Rodríguez"). [1] Codefendant Dr. Manuel Morales Maldonado's ("Dr. Morales") moved to preclude Dr. Rodríguez' report for failing to state the medical standard upon which he based his conclusions. (Docket No. 118). Similarly, codefendant Doctors' Center Hospital of Manati, Inc.'s ("DCHM") motion *in limine* argues that Dr. Rodríguez' report does not specify the manner in which DCHM was negligent or what standard of care applies to its nurses, technicians, and other personnel. (Docket No. 126). Plaintiff opposed. (Docket No. 136). Both Dr. Rodríguez and DCHM replied. (Docket Nos. 140 and 141). Plaintiff filed a surreply. (Docket No. 151).

### I. Dr. Morales' motion *in limine*

"The touchstone for the admission of expert testimony in federal court litigation is Federal Rule of Evidence 702." *Crow v. Marchand*, 506 F.3d 13, 17 (1st Cir. 2007). Rule 702 requires the expert's testimony to be based on "sufficient facts or data" and "reliable principles and methods." Fed. R. Evid. 702. "Rule 702 has been interpreted

---

[1] Dr. Rodríguez rendered his report on February 27, 2023. (Docket No. 118-2). The Report was not supplemented or amended.

liberally in favor of the admission of expert testimony." *Saldana Caban v. Centro Medico del Turabo, Inc.,* No. CV 22-1019 (GMM), 2023 WL 5122171, at *3, 2023 U.S. Dist. LEXIS 140738 (D.P.R. Aug. 10, 2023)(quoting *Levin v. Dalva Bros.*, Inc., 459 F.3d 68, 78 (1st Cir. 2006)).

A district court examining the reliability aspect of an expert's opinion, must determine: 1) whether the expert is qualified, 2) whether the opinion is supported by reliable information or knowledge, and 3) whether the opinion is supported by logical scientific reasoning or methodology. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589-590, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

As to the first requirement, I conclude that Dr. Rodríguez is qualified to render his expert opinion in this case. Dr. Rodríguez' resume shows that he has a specialty in Internal Medicine and a subspecialty in Cardiology. (Docket No. 118-1). He is Board certified in both disciplines. (*Id.*). His resume also includes his extensive experience as a practicing physician. Because this is a case about the management of sepsis in an emergency room, I find that Dr. Rodríguez's educational background and professional experience qualify him to render an opinion in this case.

The crux of Dr. Morales' *Daubert* challenge rests on the second part of the inquiry. He points to deficiencies in his colleague's expert report, particularly, that it fails to identify the national standard of care or elaborate on how the cited medical literature applies to Dr. Morales' intervention with the patient. (Docket No. 118 at pgs. 20-21).

An expert witness is required to provide a written and signed report that contains: "(i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii)

any exhibits that will be used to summarize or support them; (iv) a complete statement of all opinions the witness will express and the basis and reasons for them; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case." Fed. R. Civ. P. 26(a)(2)(B).

In Puerto Rico, whose substantive law controls this diversity suit,[2] "to prevail on a medical malpractice claim, … a plaintiff must prove by a preponderance of the evidence both that the standard of care was not met, and that the failure to meet an acceptable standard caused the harm." *Gonzalez-Arroyo v. Doctors' Ctr. Hosp. Bayamon, Inc.*, 54 F.4th 7, 14 (1st Cir. 2022)(citing *Pagés-Ramírez v. Ramírez–González*, 605 F.3d 109, 113 (1st Cir. 2010)). To establish both elements, "a trier of fact will generally need the assistance of expert testimony." *Id*.

The duty owed, which is the standard of care owed by physicians to their patients, is based on a national standard and must meet the requirements "generally recognized by the medical profession." *See Noel Martinez et al. v. United States of America*, 2020 WL 5039242, at *4 (D.P.R. 2020); *Cortés-Irizarry v. Corporación Insular De Seguros*, 111 F.3d 184, 189-190 (1st Cir. 1997)(Puerto Rico holds health care professionals to a national standard of care.).

The national standard of care may be shown by, for example: "(1) evidence of discussions about the described course of treatment among practitioners outside of

---

[2] *Summers v. Fin. Freedom Acquisition LLC*, 807 F.3d 351, 354 (1st Cir. 2015).

4

Puerto Rico such as at conventions, meetings or seminars; (2) presentation of relevant data like published protocols and standards; or (3) reliance on peer-reviewed literature (i.e. journals, textbooks, and treatises)." *Vargas-Alicea v. Cont'l Cas. Co.*, No. CV 15-1941 (PAD), 2020 WL 3470325 at *3 (D.P.R. June 25, 2020)(citing *Cortés-Irizarry*, 111 F.3d at 190). "However, an expert does not describe a national standard of care by merely stating what he would have done differently." *Id.*

In his report, Dr. Rodríguez opined that Dr. Morales' negligence arose from the unnecessary five-hour delay in conducting a proper evaluation and management of the patient. (Docket No. 118-2 at pgs. 10-11). Although his report did not clearly enunciate the standard of care regarding treatment of sepsis in a patient with plaintiff's medical history, Dr. Rodríguez included relevant sources in the bibliography portion pertaining to sepsis management. (Docket 126-6). *See Irizarry-Pagan v. Metro Santurce, Inc.*, No. CV 18-1532 (JAG), 2022 WL 3909158, at *2 (D.P.R. Aug. 31, 2022)(giving weight to the literature evaluated and cited by the expert in determining the national standard of care).

Furthermore, his deposition testimony expanded on the standard of care required in this case. In response to a question from Dr. Morales' attorney, he responded that it was "customary" that when a patient goes through triage and has respiratory difficulty, oxygen is placed on the patient automatically. (Docket No. 118-3 at pg. 11; pgs. 75 and 76 of Dr. Rodríguez' deposition.). Dr. Rodríguez also testified that the proper course of action would have been to consult the internal medicine specialist and not start antibiotics until labs were made and the patient was hydrated. (Docket No. 118-3 at pg. 16; pg. 80 of Dr. Rodríguez's deposition). Tellingly, when asked specifically whether his testimony was based on his own opinion or in the standard of care, Dr. Rodríguez

5

responded that "it was really based on the standard of care." (Docket No. 136-4 at pg. 6; pg. 51 of Dr. Rodríguez' deposition).

An expert report does not need to spell out the "magic words", i.e., standard of care, to be deemed sufficient. *See Saldana Caban*, 2023 WL 5122171, at *5 (finding that the expert's report was "sufficient" even though it did not spell out the applicable standard of care); *Martinez v. United States*, 33 F.4th 20, 29 (1st Cir. 2022)(citing *Cortés-Irizarry*, 111 F.3d at 190)(finding that the expert's references to the "accepted clinical practice" was sufficient and discussing that an expert's mention of "prevailing medical standard" has been deemed, when "read in context," to constitute a "satisfactory statement" of "the national standard of care."); *Irizarry-Pagan v. Metro Santurce, Inc.*, No. CV 18-1532 (JAG/BJM), 2022 WL 4243567, at *6 (D.P.R. Aug. 8, 2022), *report and recommendation adopted*, No. CV 18-1532 (JAG), 2022 WL 3909158 (D.P.R. Aug. 31, 2022)("[E]ven highly general references to source material and personal experience were enough to establish that expert testimony had a basis in reliable principles and methods.").

Ultimately, Dr. Rodríguez concluded that the delay in treatment "resulted in rapid deterioration, progression and complication of her urosepsis with multiorgan dysfunction, including a non ST elevation Myoeardial [sic] Infarction (NSTEMI), among other complications." (Docket No. 118-2 at pg. 11).

After reviewing his report and deposition testimony, I conclude that Dr. Rodríguez has sufficiently explained how certain deviations from the applicable standard of care in Dr. Morales' intervention with the patient caused the damages claimed in this case. Accordingly, Dr. Morales' motion *in limine* is DENIED.

**II.     DCHM's motion *in limine***

DCHM argues that Dr. Rodríguez's report is deficient and unreliable in that it does not specify the standard of care which is applicable to DCHM; nor the manner in which DCHM allegedly breached the same. (Docket No. 126).

With regard to DCHM's negligence, Dr. Rodríguez' report states as follows: "If it is established that the emergency room nurses or technicians did not promptly carry out his [Morales'] medical orders, or timely provided results to him [Morales], as was implied at some point at deposition, the emergency room would also be responsible for that negligence, which made the patient's condition worse." (Docket No. 126-1 at pgs. 10-11).

During his deposition, counsel for DCHM asked Dr. Rodríguez whether he had made a specific mention of any deviation from the standard of care of the nursing staff at DCHM. (Docket No. 126-2 at pg. 4; pg. 88 of Dr. Rodríguez' deposition). He responded that "if" it was the case that the nursing and administrative staff did not carry out the medical orders on time, then there could be negligence on the hospital's part. (*Id.*). However, he affirmed that his report did not specifically mention any deviation of care on the actions of the technicians or any ancillary services of the hospital for lack of information (*Id.*). In short, Dr. Rodríguez lacked the necessary information from the record to make an assessment regarding the specific deviations of care and gave a blanket conclusion based on a set of assumptions.

Given that Dr. Rodríguez did not identify any specific deviation from the standard of care as it pertains DCHM, nor did he establish a causation between the patient's deterioration and the hospital's actions, I grant DCHM's motion *in limine. See, for*

7

contrast, *Vazquez v. Hosp. Hermanos Melendez, Inc.*, No. CV 20-1387 (GMM), 2023 WL 6450462, at *9 (D.P.R. Sept. 30, 2023)(discussing how the expert witness explained that the hospital deviated from the applicable standard of care when it did not timely transfer patient to another hospital that had a neurologist on staff); *Rodriguez v. Hosp. San Cristobal, Inc.*, 91 F.4th 59, 74–75 (1st Cir. 2024)(noting that even though the expert report ascribed responsibility to the hospital for "poor hygiene," nothing in the report tied those "hygiene-related failures" to plaintiff's premature death.).

Thus, Dr. Rodríguez is precluded from rendering an expert opinion as to the deviations of the standard of care by DCHM's nurses, technicians and/or ancillary services.

### III.  Conclusion

For the reasons set forth herein, the Dr. Morales' Motion *in Limine* (Docket No. 118) is DENIED, while DCHM's Motion *in Limine* to limit the expert testimony of Dr. Rodríguez (Docket No. 126) is GRANTED.

**SO ORDERED.**

In San Juan, Puerto Rico this 23rd day of May, 2024.

S/Héctor L. Ramos-Vega
HÉCTOR L. RAMOS-VEGA
UNITED STATES MAGISTRATE JUDGE
